IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:04cv200-T

CAROL R. HENSLEY; JANICE HOLDEN;
JAMES HAMMERSMITH; CAROLYN B.
BAKER; JAMES R. BALL; BARRY F.
BOWDEN; E JEFFERSON CORN;
JAMES W. COX; MICHAEL D. EPPERSON;
FRANCIS FREEMAN; SHELBA J.
GILLESPIE; GILBERT N. HARSHFIELD;
RON HILL; JAMES HUGGINS;
DORIS B. KOHLER; DONALD MYRACLE;
CHARLES E. OWEN; LLOYD OWEN;
LYLE REEDY; CAROL STAMEY; and
DENNIS TAYLOR,

        Plaintiff,

Vs.

P. H. GLATFELTER COMPANY,

        Defendant.

MEMORANDUM AND
RECOMMENDATION

THIS MATTER is before the court on defendant's Motion to Dismiss. Having considered defendant's motion, plaintiffs' response, and defendant's reply, and having otherwise reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

I.   **Factual Background**

Plaintiff brings this action pursuant to the Employee Retirement Income Security Act, hereinafter "ERISA." Inasmuch as defendant has moved to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, the general factual allegations are taken as true and well as those specific facts that are necessary to support the claim.

This action concerns the demise of the Ecusta paper mill in Transylvania County, North Carolina. At issue are promises and representations purportedly made by defendant to induce

1

plaintiffs to forego retirement and continue their employment with the corporation that bought the mill and two-years later went into bankruptcy. Plaintiffs contend that defendant induced them to forego retirement with plaintiff through a memorandum of material modification of an employee welfare benefit Plan, that provided medical insurance coverage, but failed to disclose that such Plan would only be available to them if the corporate purchaser of the mill was able to pay the costs of the Plan. Plaintiffs allege that when the purchaser of the mill went bankrupt, defendant eliminated them from coverage under the Plan.

Plaintiffs are former salaried employees of defendant who were vested in defendant's pension plan. In 2001 when the plant was sold, they would have been eligible to retire from defendant's employment and receive medical coverage until they reached age 65 under a employee welfare benefit plan. Complaint, at ¶ 3. Defendant is the former owner of the Ecusta paper mill (hereinafter "Ecusta mill"). In 2001, defendant sold the Ecusta mill to RFS Ecusta, Inc.

The following allegations have been taken as true. Plaintiffs were the core of the Ecusta mill workforce and essential to a successful transition from defendant to RFS Ecusta. Plaintiffs were, however, all eligible to retire at the time of the transfer, which would have left the purchaser without a skilled salaried workforce knowledgeable in the operation of the Ecusta mill. If plaintiffs had taken retirement prior to transfer of the mill, they would have all been entitled to medical coverage until they reached age 65 under an employee medical benefit Plan (hereinafter "the Plan"), which covered all of defendant's salaried workforce. The Plan provided medical benefits for all of defendant's salaried employees who

    (1)    retire from employment ;

    (2)    are between the ages of 55 and 65; and

    (3)    who have a vested benefit under the Glatfelter Employer Salaried Pension Plan.

See Complaint, Ex. D., at 52. The Plan essentially provided "gap medical coverage" until the retired employee qualified for Medicare.

Plaintiff contends that defendant entered into a "side agreement" or "side letter" with RFS

Ecusta, Inc., which extended the Plan to plaintiffs if they elected not to retire from defendant, but transferred to work for RFS Ecusta, Inc. The material terms of the agreement were that the purchaser RFS Ecusta, Inc., would provide equivalent medical coverage during retirement for such employees, and if they could not provide such coverage, defendant would provide the coverage on the condition that RFS Ecusta, Inc. reimburse defendant's costs.

Plaintiffs allege that defendant failed to fully communicate these terms of the agreement to them as Plan beneficiaries. On August 3, 2001, immediately before the sale of the Ecusta mill was consummated, defendant issued a memorandum to plaintiffs from defendant's Vice President for Human Resources, William T. Yanavitch. In that memorandum, Mr. Yanavitch stated on behalf of defendant and the Plan that any salaried employee who was at least 55 years old and who

> ultimately retired from employment with RFS Ecusta, if he or she is <u>not</u> provided comparable post-retirement medical coverage from RFS Ecusta, then he or she will become eligible for post-retirement medical coverage, under the terms and conditions of the Glatfelter Salaried Medical Plan as it exists at that time, and as it may thereafter be amended . . . .
>
> * * *
>
> Please be advised that Glatfelter retains the right in the future to change amend or terminate its post-retirement medical coverage.

Complaint, Ex. A, at 1. Plaintiffs contend that they relied on such memorandum and accepted employment with RFS Ecusta, Inc. Complaint, at ¶ 20.

Plaintiff's allege that the Yanavitch memorandum failed to reflect a material term of the side letter, that being that if comparable coverage was not offered by RFS Ecusta, then defendant would provide the coverage *only if* RFS Ecusta, Inc. paid the cost of such coverage. A reasonable inference that can be drawn from the pleadings is that defendant, as the Plan administrator, failed to communicate to plaintiffs any knowledge it had as to the financial health of RFS Ecusta, Inc., and its ability to successfully operate the Ecusta mill.

Two years later, RFS Ecusta, Inc. declared bankruptcy and plaintiffs' employment terminated. Defendant promptly amended the Plan to exclude plaintiffs from coverage, stating that the bankruptcy prevented RFS Ecusta from reimbursing defendant's costs for the coverage provided for in the side agreement.

## II. Dismissal Standard

Defendants have moved for dismissal pursuant to Rule 12(b), Federal Rules of Civil Procedure, contending that plaintiffs have failed to state a cognizable claim. Rule 12(b)(6) authorizes dismissal based upon a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts ... a claim must be dismissed, without regard to whether it is based on outlandish legal theory.... What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations.

Id., at 1832 (citation omitted). For the limited purpose of making a recommendation as to disposition of defendants' motion, the undersigned has accepted as true the facts alleged by plaintiffs in the Complaint and viewed those facts in a light most favorable to plaintiffs. In NOW v. Scheidler, 510 U.S. 249, 256 (1994), the Supreme Court stated, "We have held that at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

The undersigned notes that defendant has relied exclusively on Rule 12(b)(6) and has not moved under Rule 12(c) for judgment on the pleadings, to strike surplusage, or for a more definite statement. This court's review, therefore, is limited to whether plaintiffs have stated a claim for breach of fiduciary duty under ERISA.

## III. Discussion

### A. Introduction

Plaintiffs have alleged one cause of action: Breach of Fiduciary Duty under the Employee

4

Retirement Income Security Act. Complaint, at ¶¶ 29-35. Defendant contends that such claim must be dismissed because, as a matter of law, it was acting not as a fiduciary but as a "settlor" when it amended the Plan and terminated plaintiffs' entitlement to receive medical benefits. From the outset, the undersigned believes that defendant's argument for dismissal is flawed on three grounds:

(1) the 2003 amendment of the Plan may be an "effect," but plaintiffs appear to also allege that the cause was the 2001 memorandum which failed to disclose a material term, which lead them to forego retirement to their detriment and lead to the adverse modification in 2003;

(2) while defendant may later be found to be a "settlor" when it acts to modify a Plan, it is also possible that defendant acted as a fiduciary when it failed to fully communicate with Plan beneficiaries in 2001; and

(3) determination of what acts are done as a settlor and what acts are done as a fiduciary may be a fact intensive determination, requiring discovery, and is not appropriate for disposition under Rule 12. The is especially important where a corporation attempts to be both the Plan sponsor and administrator.

**B.     Plaintiffs' "First [and only] Claim for Relief**

In plaintiffs' First Claim for Relief," they cite 29, United States Code, Sections 1109 and 1132 as the source of their entitlement to relief. Inasmuch as Section 1132 contains a number of possible and specific causes of action, such a broad citation of Section 1132 does not pinpoint the actual provision of ERISA that gives rise to their claim. Review of the allegations contained in the First Claim for Relief points to only one claim inasmuch as plaintiffs seek relief for themselves and allege breach of a fiduciary duty. Based on *those* allegations, the only applicable subpart of Section 1132 appears to be Section 1132(a)(3),[1] which provides:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms

---

[1] The plaintiffs could have and still may through amendment assert claims for benefits due them pursuant to 28, United States Code, Section 1132(a)(1)(b).

5

> of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Id.

For plaintiffs' claim to be actionable under such subsection, plaintiffs must alleged an "act or practice which violates any provision of this subchapter or the terms of the plan . . . ." Under notice pleading, an allegation of a breach of a fiduciary duty satisfies this element. Plaintiffs have made just such an allegation.

Defendant contends that it is entitled to dismissal under Rule 12(b)(6) because it was acting as a "settlor" rather than as a fiduciary when it terminated plaintiffs benefits. As discussed above, that argument appears to be premature inasmuch as the allegations contain acts that could have been done in a fiduciary capacity. Read in a light most favorable to plaintiffs, the Complaint not only alleges that defendant improperly terminated the Plan as to them, they also allege that defendant, acting as a fiduciary, failed to fully inform them of material aspects of the deal it had struck with RFS Ecusta, Inc. concerning the Plan, or of the financial well being of RFS Ecusta, Inc. if in fact defendant knew such condition in its fiduciary capacity.[2] To find that defendant was at all times acting as a settlor at this point would require a departure from the well-pleaded Complaint, which is not appropriate under Rule 12(b)(6).

The undersigned finds that dismissal is also inappropriate inasmuch as plaintiffs' claim is nearly identical to a claim the Supreme Court let stand. In Varity Corp. v. Howe, 516 U.S. 489 (1996), the employer intentionally misled a group of employees to believe, to their detriment, that their benefits would be secure if they agreed to be transferred to a new subsidiary corporation. The employer failed, however, to disclose that it had reason to believe that the subsidiary would fail. Id., at 493. Thereafter, the employer conveyed some of its poorly performing divisions and debt to the new subsidiary, with the expectation that *when* the subsidiary failed it would: (1) eliminate the poorly-performing divisions; (2) erase the debts; and (3) relieve Varity Corporation from the

---

[2] Failure to disclose the financial stability of RFS Ecusta is not alleged in so many words, but has been inferred by the court under the reasoning of the Supreme Court in NOW, supra, as one of the "specific facts" that is necessary to support general allegations.

obligation of paying benefits to the misled employees. Id.

As alleged in this case, the employer in Varity met with the employees and assured them that the subsidiary had a "bright future" and that their benefits would remain secure if they transferred. Id., at 501. Not only did 1,500 employees transfer, Varity Corporation unilaterally transferred to the new subsidiary the obligation of paying benefits to 4,000 retired employees. Those 4,000 retired employees did not know of the transfer or give permission to Varity Corporation to make such transfer. Straddled with debt, poorly performing divisions, and the obligation to pay preexisting benefits to 4,000 people, the subsidiary failed as anticipated and the employees lost their non-pension benefits. Id., at 494.

The Supreme Court found that Varity Corporation had breached a fiduciary obligation under ERISA, finding that

> [t]o participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense, is not to act solely in the interest of the participants and beneficiaries. As other courts have held, lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in ... ERISA.

Id., at 506 (citations omitted; internal quotations omitted).

Defendant contends in this case that its decision to cancel employee welfare benefits as to the salaried Ecusta employees was a decision made in its corporate, nonfiduciary capacity as a plan sponsor or settlor. That is certainly a possibility. Without doubt, ERISA's rules for fiduciaries do not apply to plan sponsors or settlors and actions taken in such capacities would not expose the employer to liability under Section 1132(a)(3). See Borst v. Chevron Corp., 36 F.3d 1308, 1323, n. 28 (C.A.5 1994), cert. denied, 514 U.S. 1066 (1995). It is clear, however, that

> employers who are also plan sponsors wear two hats: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, funding, amending, and terminating the trust. The fiduciary obligations imposed by ERISA are implicated only where an employer acts in its fiduciary capacity.

Hunter v. Caliber Sys., Inc., 220 F.3d 702, 718 (6th Cir.2000) (citations omitted). If defendant participated "knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money..." a breach of fiduciary duty would occur and liability would attach to defendant.

7

Varity, supra.

While defendant appears to be correct that Section 1132(a)(3) will not support a claim for acts done in its capacity as a settlor, it appears to be premature and legally inappropriate in light of Varity to declare that defendant was at all times acting as a settlor. Reading the Complaint in a light most favorable to plaintiffs, it appears that they have alleged that defendant breached its fiduciary duty when it failed to disclose that their future eligibility for benefits would be inextricably tied to RFS Ecusta's financial solvency and such corporation's ability to reimburse defendant. Complaint, ¶ 32(g). Had the Yanavitch memorandum simply disclosed such purportedly material fact, it would have been difficult for plaintiffs to state a claim under Section 1132. At this point, it would appear under Varity that the issue is whether defendant *knowingly* failed to disclose such information.

Further supporting plaintiffs' statement of a cause of action is the Yanavitch memorandum which is attached to and incorporated in the Complaint as Exhibit A. Mr. Yanavitch states in that memorandum that it is a "*summary of material modifications* to Glatfelter's Group Medical and Dental Plan for Salaried Employees." (Emphasis added). It provides in relevant part:

> When an Age 55 Transferred Employee ultimately retires from employment with RFS Ecusta, if he or she is not provided comparable post-retirement medical coverage from RFS Ecusta, then he or she will become eligible for post-retirement medical coverage, under the terms and conditions of the Glatfelter Salaried Medical Plan as it exists at that time, and as it may thereafter be amended. The current terms of the Glatfelter Salaried Medical plan provide for post-retirement ,medical benefits for the retiree until age 65, and for the retiree's spouse . . . until he or she attains age 65. Please be advised that Glatfelter retains the right in the future to change, amend or terminate its post-retirement medical coverage.

Complaint, Ex. A, at 1. In this document, defendant does not mention the additional requirement of reimbursement by RFS Ecusta, Inc., the financial stability of the buyer, or the possibility of elimination of beneficiaries in the event the buyer fails to reimburse defendant.

Reading Varity in conjunction with the allegations of the Complaint, plaintiffs allege that defendant, when it published the "summary of material modifications" of the Plan, had a fiduciary obligation to disclose to plaintiffs the material details of the agreement and *may* have had a further

duty to provide them with information it had, if any, as to the financial health of RFS Ecusta.³ By asserting a knowing failure to provide such information, plaintiffs have alleged a breach of fiduciary duty. Plaintiff alleges:

> (g) In entering into a conspiracy and scheme with the buyer, RFS Ecusta, wherein the Defendant would be relieved of its obligation to provide the post-retirement medical benefits to the Plaintiffs if RFS Ecusta failed to do so in spite of Defendant's assurances to the contrary directly to the Plaintiffs.
>
> (h) In conspiring and scheming with Defendant's employees and agents of Defendants to terminate and repudiate the rights of the Plaintiffs under the post-retirement medical benefits . . . .

Complaint, at ¶ 32(g)&(h).

While defendant may have had no duty to seek a modification of the Plan and arguably had no duty to guarantee plaintiffs' future participation, once it embarked on such a course defendant had a fiduciary duty, as in Varity, to "act solely in the interest of the participants and beneficiaries" and communicate the material terms of any such agreement. Varity, supra, at 506. A threshold duty of a fiduciary, as in Varity, is to fully inform Plan participants of material alterations in the Plan. Plaintiffs have, therefore, stated a cause of action under Section 1132(a)(3).

## IV. Defendant's Arguments Exceeding Rule 12(b)(6)

Defendant has made additional arguments under the heading of Rule 12(b)(6) concerning why additional "claims" should be dismissed. At pages "i" through "iv" and then again at page seven of the 48 page brief, defendant presents the court with a "Statement of the Questions Involved," all of which defendant suggests should be answered in the affirmative. The bulk of defendant's brief is devoted to the remaining six questions. The only claim which has been asserted is captioned as plaintiffs' "First Claim for Relief." There is no second claim.

Under Rule 12(b)(6), the only issue is "Whether Plaintiffs' Claims for Breach of Fiduciary

---

³ Whether a fiduciary's failure to provide information as to the financial viability of a successor is actionable under ERISA was left open by the Court in Varity. "Because the breach of this duty [to not mislead] is sufficient to uphold the decision below, we need not reach the question whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries." Id., at 506.

9

Duty Fail to State a Claim Upon Which Relief Can Be Granted." Once that question is answered, the Rule 12(b)(6) inquiry stops.

The remainder of the seven issues presented by defendant appear to arise from plaintiffs' broad jurisdictional citation of statutes in the first paragraph of the Complaint, speculation by defendant as to other claims that plaintiffs could have asserted, and claims for damages which may very well exceed those allowed by statute.

While defendant's extensive brief ably dissects the Complaint, Rule 12(b)(6) presents a narrow question and further consideration of most of defendant's "issues" would require the court to assume the existence of claims that have not been specifically asserted. In the end, what would be required is for the court to rewrite plaintiffs' Complaint. This is not the role of the court, especially where no motion to strike surplusage or for judgment on the pleadings has been filed.

Put another way, defendant has set out more rabbits than the court has dogs or time to hunt even if the court were so inclined to do so. There is only one rabbit to hunt in this case and that rabbit has been found. This a problem inherent in 48 page briefs in support of a motion to dismiss and 18 page reply briefs, all concerning a single cause of action. If that were typical practice, this court would be overwhelmed by periphrastic motions practice.[4]

Instead, some of the damages which plaintiff may be entitled to recover are clearly provided by the statute and will only come into play if this matter goes to trial. Demands for relief are simply not causes of action. However, the case law and statutes are clear that ERISA does not allow damages for emotional distress, mental anguish, and punitive damages, which are found in paragraphs 39 and 40 of the Complaint. Accordingly, the undersigned will include a recommendation that such requests or demands of plaintiffs be dismissed in conjunction defendant's

---

[4] Defendant's brief also appears to stray away from the confines of Rule 12(b)(6), and contains arguments such as "Plaintiffs are essentially seeking benefits allegedly due under the Plan *on the false premise* that the Termination Amendment was ineffectual *ab initio* . . . ." Defendant's Brief, at 38 (emphasis added). The allegations of the Complaint must be taken as true and many of defendant's argument would have been more appropriate under Rule 56.

Rule 12(b)(6) motion.

Inasmuch as plaintiffs have clearly stated a cause of action which is nearly identical to that approved in Varity, the next step is to move on to discovery at which time plaintiffs may wish to seek leave to amend their Complaint, conform their demands for damages to that allowed by the statute and interpretive case law, and seek leave to add any additional claims the discovery process uncovers.

V. **Conclusion**

The undersigned will, therefore, recommend to the district court that defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim be denied inasmuch as plaintiffs have clearly stated a claim under Varity, and that the balance of defendant's argument, except for certain demands or requests for relief as set forth above, be denied without prejudice as to reasserting the substance of such, within the 25 page limit, in the form of a motion for summary judgment at the appropriate time.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Rule 12(b)(6) Motion to Dismiss be **DENIED,** except as to plaintiffs' demands or requests for relief for emotional distress, mental anguish, and punitive damages contained in the Complaint, and as those demands or requests for relief that defendant's Motion to Dismiss be **ALLOWED**.

**IT IS FURTHER RECOMMENDED** that the remainder of defendant's arguments be **DENIED** without prejudice as to reasserting them in support of a motion for summary judgment.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (10) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections

on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

This 3 day of February, 2005.

_____
DENNIS L. HOWELL
UNITED STATES MAGISTRATE JUDGE

United States District Court
for the
Western District of North Carolina
February 3, 2005

* * MAILING CERTIFICATE OF CLERK * *

Re: 1:04-cv-00200

True and correct copies of the attached were mailed by the clerk to the following:

　　James M. Kimzey, Esq.
　　James M. Kimzey, Esq.
　　P.O. Box 506
　　Brevard, NC  28712

　　Michael K. Pratt, Esq.
　　Ramsey, Hill, Smart, Ramsey & Pratt, P.A.
　　1 North Gaston Street
　　Brevard, NC  28712

　　H. Paul Averette Jr., Esq.
　　P. O. Box 348
　　Brevard, NC  28712

　　Paul B. Welch III, Esq.
　　P.O. Box 1056
　　Brevard, NC  28712

　　Wyatt S. Stevens, Esq.
　　Roberts & Stevens, P.A.
　　P.O. Box 7647
　　Asheville, NC  28802

　　Thomas G. Collins, Esq.
　　Buchanan Ingersoll Professional Corporation
　　One South Market Square
　　213 Market St.
　　Harrisburg, PA  17101

```
cc:
Judge                    (✓)
Magistrate Judge         (✓)
U.S. Marshal             ( )
Probation                ( )
U.S. Attorney            ( )
Atty. for Deft.          ( )
Defendant                ( )
Warden                   ( )
Bureau of Prisons        ( )
Court Reporter           ( )
Courtroom Deputy         ( )
Orig-Security            ( )
Bankruptcy Clerk's Ofc.  ( )
Other_____          ( )
```

Date: 2/3/05

Frank G. Johns, Clerk
By: P. Freeman
Deputy Clerk