# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL NO. 1:04CV200

| | |
|---|---|
| CAROL R. HENSLEY; JANICE HOLDEN; JAMES HAMMERSMITH; CAROLYN B. BAKER; JAMES R. BALL; BARRY F. BOWDEN; E. JEFFERSON CORN; JAMES W. COX; MICHAEL D. EPPERSON; FRANCES FREEMAN; SHELBA J. GILLESPIE; GILBERT N. HARSHFIELD; RON HILL; JAMES HUGGINS; DORIS B. KOHLER; DONALD MYRACLE; CHARLES E. OWEN; LLOYD OWEN; LYLE REEDY; CARROLL STAMEY, and DENNIS TAYLOR, <br><br>        Plaintiffs, <br><br>Vs. <br><br>P. H. GLATFELTER COMPANY, <br><br>        Defendant. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on motion of Defendant P. H. Glatfelter Company for summary judgment. Responses and replies have been filed by the parties, and the matter is now ripe for adjudication. For the

reasons stated below, the Defendant's motion for summary judgment is denied.

## I.  FACTS

The Plaintiffs filed this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq*. ("ERISA").  Plaintiffs are former employees of P.H. Glatfelter Company ("Defendant" or "Glatfelter"), Ecusta Division, which was sold to RFS Ecusta, Inc. ("RFS Ecusta"). **Complaint, filed September 22, 2004, ¶ 3.**  At the time of the sale, all Plaintiffs were over the age of 55 and eligible for benefits from the Glatfelter Salaried Medical Plan ("Glatfelter Plan" or the "Plan") should they have chosen to retire at that time.  *Id*., ¶ 4.  The Plaintiffs were informed that if they accepted continued employment with RFS Ecusta following the sale, RFS Ecusta would provide them with comparable benefits at their retirement.  *Id*., ¶ 16.  Furthermore, the Plaintiffs were informed that if RFS Ecusta was unable to provide them with benefits comparable to those offered by the Glatfelter Plan at that time, they could instead receive the benefits offered under the Glatfelter Plan.  *Id*., ¶ 17.  However, unbeknownst to the Plaintiffs

and pursuant to an agreement between the Defendant and RFS Ecusta, RFS Ecusta had an obligation to reimburse the Defendant for costs incurred as a result of providing benefits in the event RFS Ecusta was unable to do so.  **See Exhibit 2, Post-Retirement Medical Benefits Side Letter Agreement dated August 9, 2001, *included in* Defendant's Appendix in Support of Summary Judgment, filed October 21, 2005.**  In the notice to Plaintiffs regarding the benefit arrangement, the Defendant reiterated its right under the Plan to modify or terminate coverage at any time.  **See Exhibit 1, Summary Material Modification of P. H. Glatfelter's Group Medical and Dental Plan for Salaried Employees dated August 3, 2001, *included in* Plaintiffs' Appendix in Opposition to Defendant's Motion for Summary Judgment, filed October 21, 2005.**  However, Defendant also informed the Plaintiffs that it was "provid[ing] assurance[s]" regarding retiree benefits, and that "[t]he purpose to [sic] this agreement is to eliminate any concern employees may have about their post retirement medical coverage when they go to work for RFS Ecusta." *Id*.; *see also,* **Exhibit 2, August 4, 2001 Memorandum from William Yanavitch to Ecusta Salaried Employees Currently Age 55 & Over, *included in* Plaintiffs' Appendix.**  Defendant also assured Plaintiffs that "PHG and RFS

Ecusta have developed this retirement medical coverage agreement so that employees 55 and over can transfer to the new company without major concerns." ***Id*., at Exhibit 2.**

Ultimately, all the Plaintiffs accepted employment with RFS Ecusta. **Complaint, ¶ 21.** Thereafter, RFS Ecusta declared bankruptcy and did not provide any retirement medical coverage to the Plaintiffs; the Plaintiffs subsequently elected to receive benefits from the Glatfelter Plan. ***Id*., ¶¶ 22-23.** Following the bankruptcy of RFS Ecusta, Glatfelter was no longer reimbursed by RFS Ecusta for the expense of providing benefits to the RFS Ecusta employees, and notified the Plaintiffs in September 2003 that their benefits under the Glatfelter Plan were being terminated effective October 31, 2003. ***Id*., ¶¶ 23-24.** In a cover letter attached to the summary material modification ("SMM") informing Plaintiffs of their benefit termination, Defendant stated that its provision of benefits was contingent upon being reimbursed by RFS Ecusta, and that benefits were being terminated both because RFS Ecusta had defaulted on its reimbursement obligation and because of "financial challenges" facing Glatfelter. **Exhibit 5, Summary Material Modification to P.H. Glatfelter's Group Medical and Dental Plan for**

**Salaried Employees dated September 2003,** *included in* **Defendant's Appendix.** Benefits were terminated only for those participants or beneficiaries of the Glatfelter Plan who had accepted employment with RFS Ecusta. **Complaint, ¶ 24.**

Plaintiffs filed this action on September 22, 2004. Following resolution of Defendant's motion to dismiss, the claims remaining against Defendant are for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) and failure to comply with Plaintiffs' request for plan documents under 29 U.S.C. § 1132(c). **See Memorandum and Order, filed August 19, 2005.** Defendant now moves for summary judgment on these two remaining claims.

## II.  STANDARD OF REVIEW

Summary judgment should be granted when no genuine issues of material fact remain for trial. ***Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005).** "Summary judgment is proper 'unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" ***Id.*** **(***quoting*

*Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 249 (1986)).** A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but [must] . . ., by affidavits or as otherwise provided in [Rule 56], . . . set forth specific facts showing that there is a genuine issue for trial." **Fed. R. Civ. P. 56.**

### III. DISCUSSION

**A. Plaintiffs' Claim Under 29 U.S.C. § 1132(a)(3)**

Plaintiffs' first claim is brought under 29 U.S.C. § 1132(a)(3) for breach of fiduciary duty. An ERISA fiduciary has a duty not to make material misrepresentations to beneficiaries, or provide incomplete, inconsistent, or contradictory disclosures that misinform beneficiaries. *See Griggs v. E. I. Dupont de Nemours & Co.*, **237 F.3d 371, 380-81 (4th Cir. 2001).** A claim that a fiduciary has breached this duty requires a plaintiff to prove: (1) that the defendant was a fiduciary of the ERISA plan; (2) that the defendant breached its fiduciary responsibilities under the plan; and (3) that the participant is in need of injunctive or "other appropriate equitable relief" from the court to remedy the violation or enforce the plan. *Id.,* **at 379-80**; *see also*

***Byrd v. Canadian Imperial Bank of Commerce*, 354 F.Supp.2d 597, 611 (D.S.C. 2005).** To prove the "breach" element of this claim, a plaintiff must show that the defendant was acting in a fiduciary capacity when it made the representations, the information misrepresented was material, and the misrepresentation was relied upon to plaintiff's detriment. *See **James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002); *Wiseman v. First Citizens Bank & Trust Co.*, 215 F.R.D. 507, 510 (W.D.N.C. 2003).** A failure to speak, or "omission," can be the basis of a breach of fiduciary duty claim when the fiduciary knows that not disclosing the material information could be harmful to the beneficiary. ***See Griggs*, *supra* ("In sum, the duty to inform 'entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'" (quoting *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993))).** Finally, to show "materiality" a plaintiff must establish that "'there is a substantial likelihood that [the misrepresentation or omission] would mislead a reasonable employee in making an adequately informed decision about if and when to retire.'" ***Bunnion v. Consol. Rail Corp.*, 108 F.Supp.2d 403, 415-16 (E.D. Pa.**

1999), *aff'd*, 230 F.3d 1348 (3d Cir. 2000) (quoting *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993)).

Plaintiffs claim that Defendant breached its fiduciary duty by not informing Plaintiffs that provision of benefits was dependent upon reimbursement by RFS Ecusta.  **Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment ["Plaintiffs' Brief"], filed October 21, 2005, at 8.**  Plaintiffs also assert that "it is the additional separate contention of the Plaintiffs that the intentional, deliberate withholding of any information concerning the very existence of the side letter agreement with the reimbursement provision, in and of itself, creates liability under *Varity*, *Griggs*, *Howe*, et al."[1]  ***Id.*, at 11 (footnote added).**

---

[1] The Amendment to the plan revealed the existence of the Side Letter Agreement, and the August 3, 2001, SMM revealed that Defendant and RFS Ecusta had entered into an agreement so as to continue the benefits of employees who accepted employment with RFS Ecusta.  **See Exhibit 3, *included in* Defendant's Appendix; Exhibit 1, *included in* Plaintiffs' Appendix.**  The only undisclosed information is the reimbursement relationship between Defendant and RFS Ecusta.  The Court will, therefore, construe this argument as being that even if the continued provision of benefits was not absolutely contingent on RFS Ecusta's reimbursement to Defendant, Defendant nevertheless violated 29 U.S.C. § 1132(a)(3) by failing to disclose the reimbursement relationship between itself and RFS Ecusta.

An ERISA fiduciary owes "an unyielding duty of loyalty to the beneficiary." **Griggs**, **237 F.3d at 380.** This entails a duty not to make incomplete, inconsistent, or misleading disclosures to beneficiaries. *Id.* As to Plaintiffs' first argument, if there was a contingency whereby these Plaintiffs would no longer be provided benefits if RFS Ecusta defaulted on their reimbursement obligation, Defendant had a duty to bring that contingency to the beneficiaries' attention when it disclosed the arrangement between Defendant and RFS Ecusta as to retiree benefits.

Defendant argues that there clearly was no reimbursement contingency because it was not contained in the Amendment to the Glatfelter Plan. Defendant further states that because the "reimbursement arrangement was not incorporated into the actual Amendment to the Plan [it] had no bearing on Glatfelter's obligations with respect to Plaintiffs."[2] **Defendant's Reply Memorandum in further support of Motion for Summary Judgment**

---

[2]Whether the alleged reimbursement contingency was included in the 2001 Amendment is not determinative of this issue. For example, the Supreme Court did not relieve the fiduciary of its duty to speak fully and truthfully in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), although it is clear that the information not disclosed – that defendant had set in motion a scheme to defraud the plaintiffs of their benefits – was not expressed in the plan or any of its amendments.

**["Defendant's Reply Memorandum"], filed November 4, 2005, at 9 (footnote added).** However, the cover letter accompanying the September 2003 SMM states in relevant part:

> The Side Letter between Glatfelter and RFS entities stated that if the RFS entities did not provide post-retirement medical benefits to salaried former Ecusta Division employees which were comparable to those provided under the Salaried Medical Plan, *Glatfelter would provide the benefits if RFS Ecusta, Inc. would reimburse Glatfelter for the costs associated with the provision of such benefits*. . . .
>
> . . .
>
> The RFS entities have not met their obligations to reimburse Glatfelter for the benefits provided to the salaried Ecusta Division employees retiring from the RFS entities. As of this date, mounting medical claim expenses have been incurred under the Salaried Medical Plan which have not been reimbursed to Glatfelter.
>
> . . .
>
> *Given the RFS entities' default on their obligation* and the financial challenges facing our business, it was deemed necessary to further amend the Salaried Medical Plan to terminate post-retirement medical benefits for the RFS Transferred Employees.

**Exhibit 5, Summary Material Modification to P.H. Glatfelter's Group Medical and Dental Plan for Salaried Employees dated September 2003,** *included in* **Defendant's Appendix (emphasis added).** This cover letter was issued by Defendant's former Manager of Benefits and Compensation Patricia Kessler and drafted by her in coordination with Defendant's Vice President of Human

Resources William Yanavitch.  **See Exhibit 7, Deposition of Patricia Kessler, taken May 31, 2005,** *included in* **Defendant's Appendix, at 45-46.**  A reasonable juror could find that this letter establishes the existence of a reimbursement contingency in regards to Plaintiffs' benefits that Defendant was aware of beforehand and failed to disclose to Plaintiffs.  On the other hand, a reasonable juror could find that, in light of the totality of the evidence, there was no reimbursement contingency and the letter simply misstated the relationship between Defendant's reimbursement arrangement with RFS Ecusta and the continuation of Plaintiffs' benefits.  The choice between these findings is for a jury to determine.

Defendant asserts that even if there was a reimbursement contingency, there was no duty to disclose that information to Plaintiffs because it had the right under the plan to terminate retiree benefits at any time.  **See Defendant's Memorandum in Support of Motion for Summary Judgment, filed September 19, 2005, at 15-18.**  In other words, Plaintiffs could not have detrimentally relied on any misstatement or omission because reliance, in the face of Defendant's right to terminate benefits, would not have been reasonable.  While it is true that Defendant had the right to terminate

benefits, it did not have the right as an ERISA fiduciary to make material misrepresentations to beneficiaries, or provide incomplete, inconsistent, or contradictory disclosures that misinformed beneficiaries.  **See Griggs, 237 F.3d at 380-81**.  In its communications with Plaintiffs prior to their acceptance of employment with RFS Ecusta, Defendant told Plaintiffs that it was "provid[ing] assurance[s]" regarding retiree benefits, that "[t]he purpose to [sic] this agreement is to eliminate any concern employees may have about their post retirement medical coverage when they go to work for RFS Ecusta," and that "PHG and RFS Ecusta have developed this retirement medical coverage agreement so that employees 55 and over can transfer to the new company without major concerns."  **Exhibits 1 and 2, *included* in Plaintiffs' Appendix, *supra*.**  The Court has ruled previously that these statements were not effective to change the terms of the plan.  **See Memorandum and Order, filed August 19, 2005.**  However, that does not preclude the possibility that Plaintiffs could have reasonably relied on these statements, combined with the omission of any reference to a reimbursement contingency, for the proposition that their ERISA fiduciary was not aware of a specific substantial risk to which Plaintiffs would be subjecting their benefits if they accepted

employment from RFS Ecusta. This is true regardless of any generalized right to terminate benefits, as no provision of ERISA allows a fiduciary to abrogate its "unyielding duty of loyalty" – and the consequential duty not to make material misstatements or omissions – based on such a general right. Defendant could not, in conformity with its duty, provide assurances intended "to eliminate any concern employees may have" regarding benefits while concurrently withholding information that a specific substantial risk loomed in the background for any employee who accepted employment from RFS Ecusta.[3]

---

[3]The Court does not find that an ERISA fiduciary has a duty to inform beneficiaries of every conceivable scenario that could cause alteration or termination of benefits. **See, e.g., Griggs, 237 F.3d at 383 ("The Farr II court made clear, however, that U.S. West's duty to inform did not extend to 'individualized notice of all the ways the tax laws would impact each of [the plaintiffs'] individual distributions.'" (citation omitted)).** Rather, an ERISA fiduciary cannot provide assurances to beneficiaries regarding the relationship between a specific arrangement and their benefits while at the same time withholding information regarding that arrangement concerning termination of benefits on the happening of a specific contingency. In regard to Plaintiffs' benefits here, they were led to believe if they took employment from RFS Ecusta they would not be placed in a worse position than employees who retired directly from Defendant. If Defendant knew differently, it should have disclosed that information once it undertook to assuage Plaintiffs' concerns regarding the move to RFS Ecusta so they "could have made a more informed choice about" retirement. **Id., at 382.**

Finally, a reasonable jury could find that failure to disclose the alleged reimbursement contingency "would mislead a reasonable employee in making an adequately informed decision about if and when to retire." **Bunnion, supra**. The jury could also find that Defendant should have known that failure to inform Plaintiffs of the contingency could be harmful to them, as the contingency affected only those employees who accepted employment with RFS Ecusta and would result in loss of benefits. **Bunnion, supra**.

The Court also finds Plaintiffs' second argument (or theory) sufficient to survive summary judgment. Defendant's failure to inform the Plaintiffs of the reimbursement relationship with RFS Ecusta could amount to a material misrepresentation or omission in that this failure deprived the Plaintiffs of the opportunity to make further inquiry regarding the possible effects this relationship could have on their benefits. Further, a reasonable jury could determine that Plaintiffs' relied on this omission or misrepresentation to their detriment, for they had no way of knowing further inquiry was necessary. Whether there was an express contingency arrangement or not, the reimbursement relationship ultimately led to the termination of Plaintiffs' benefits. A reasonable jury could find that Defendant, an ERISA fiduciary who

was required to act in the best interest of the beneficiaries and who owes "an unyielding duty of loyalty to the beneficiary," should have known that its failure to disclose this arrangement would be harmful to Plaintiffs.  **See, Griggs, 237 F.3d at 380.**

For the foregoing reasons, Defendant's motion for summary judgment in regards to Plaintiffs' claim under 29 U.S.C. § 1132(a)(3) is denied.

### B. Plaintiffs' Claim Under 29 U.S.C. § 1132(c)

Plaintiffs also allege Defendant "failed to provide the 'Plan Document' as required by 29 U.S.C. § 1132(c)."  **Complaint, at 8.**

Plaintiffs made a total of four requests for plan documents.  **See Exhibits 8, 9, 10 and 11,** *included in* **Plaintiffs' Appendix; Plaintiffs' Brief, at 14-15.**  In response to each request, Defendant provided the same plan booklet (or "summary plan description").  **Plaintiffs' Brief, at 15.**  Plaintiffs argue that there are other plan documents that were not produced, and cite the following two passages from the plan booklet as support for this contention:

> This booklet is the Summary Plan Description for the P.H. Glatfelter Company Group Medical and Dental Plan for Salaried Employees.  It explains in non-Technical language the essential features of your Medical and Dental Plan.  *In the event of any*

*conflict between this booklet and the legal documents under which the Plan is established and administered, those documents will control.*

**Id., at 14 (quoting Exhibit D, Glatfelter Plan at Table of Contents, *attached to* Complaint (emphasis added)).**

Inspection of Plan

*The Plan Document is on file at the employer's office* at the address shown on the factual summary and can be inspected by you at any time during normal business hours.

**Id., at 15 (quoting Glatfelter Plan, at 62 (emphasis added)).** Additionally, Myra Cooper, Manager of Compensation and Benefits at Defendant's Ecusta Mill, testified that there "should have been" other plan documents in existence, which were not produced, although she had never seen them.

> Q: Okay. Do you know whether that plan document was at Glatfelter's office?
> A: It should have been. Yes.

**Exhibit 9, Deposition of Myra Cooper, taken May 27, 2005, *included in* Defendant's Appendix, at 35.**

On the other hand, Defendant points to the deposition testimony of Patricia Kessler and William Yanavitch. Patricia Kessler testified that the plan booklet is the only plan document in existence.

> Q: Again, do you believe that any other plan document exists other than this [plan booklet]?
> A: There is - - there is no other document, to the best of my knowledge.
>
> . . .
>
> Q: There is no other document [other than the plan booklet]?
> A: There is no other document.
>
> . . .
>
> Q: Okay. Would it be fair to say that Glatfelter is treating this [plan booklet] as both the summary plan description and the plan document?
> A: It is.

**Exhibit 7, Kessler Deposition, at 101-02.** Mr. Yanavitch's testimony is in accord on this issue with that of Ms. Kessler.

> Q: Do you know if there ever were any [plan documents other than the booklet] that existed?
> A: No.
> Q: Have you made an effort to determine if there ever were any that existed?
> A: Yes. These are one in the same.

**Exhibit 8, Deposition of William T. Yanavitch II, taken June 27, 2005,** *included in* **Defendant's Appendix, at 197.**

In the face of this conflicting evidence, it is for a jury to determine whether there were other documents in existence that were not provided to Plaintiffs. Therefore, Defendant's motion for summary judgment as to Plaintiffs' claim under 29 U.S.C. § 1132(c) is denied.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's motion for summary judgment as to Plaintiffs' claims under 29 U.S.C. §§ 1132(a)(3) and 1132(c) is hereby **DENIED.**

**Signed: November 28, 2005**

Lacy H. Thornburg
United States District Judge